# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**
February 10, 2016
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**DUANE EUGENE GUMP,**
**Claimant Below, Petitioner**

**vs.)    No. 14-1087** (BOR Appeal No. 2049472)
                      (Claim No. 990028870)

**CONSOLIDATION COAL COMPANY/EASTERN REGION SHOEMAKER,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Duane Eugene Gump, by M. Jane Glauser, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Consolidation Coal Company/Eastern Region Shoemaker, by Edward M. George III, its attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated September 24, 2014, in which the Board affirmed a May 6, 2014, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's March 14, 2013, decision to not grant a permanent partial disability award for the thoracic spine. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Gump, a coal miner for Consolidation Coal Company/Eastern Region Shoemaker, was injured on September 4, 1998, when his head crashed into a low hanging pipeline in an underground mine. On October 10, 2000, an independent medical evaluation from John Griffith, M.D., was completed. Dr. Griffith found Mr. Gump to be at his maximum degree of medical improvement. Dr. Griffith recommended 6% whole person impairment for the right shoulder and

1

5% whole person impairment for the low back. This equated to a total of 11% whole person impairment. Based upon the report of Dr. Griffith the claims administrator granted Mr. Gump an 11% permanent partial disability award on November 7, 2000. On March 30, 2002, a report from Larry DeGarmeaux, D.C., was completed. Dr. DeGarmeaux found that Mr. Gump suffered from 15% whole person impairment for the lower back. Based upon the report of Dr. DeGarmeaux the claims administrator granted Mr. Gump a further permanent partial disability award on April 18, 2002.

On June 15, 2006, an independent medical evaluation of Mr. Gump was issued by Bruce Guberman, M.D. Dr. Guberman's found Mr. Gump to be at his maximum degree of medical improvement. Dr. Guberman recommended 8% whole person impairment for the right shoulder, 12% whole person impairment for the cervical spine, and 7% whole person impairment for the thoracic spine. On September 22, 2011, Mr. Gump reported to Joseph E. Grady II, M.D., for an independent medical evaluation. Dr. Grady noted that he had suffered a motor vehicle accident with a whiplash-type injury in 2000, which was approximately two years after the date of injury. Dr. Grady opined that Mr. Gump had reached his maximum degree of medical improvement. Dr. Grady found no ratable criteria from Table 75 of the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) for the cervical spine. However, he did note 11% whole person impairment for range of motion defects. Dr. Grady placed Mr. Gump in Category II of West Virginia Code of State Rules § 85-20-E (2006). This placement adjusted the whole person impairment down to 8%. In the shoulder, Dr. Grady found 1% whole person impartment for shoulder flexion. However, because Mr. Gump had a more severe injury to the right shoulder in which he had subsequent surgery, Dr. Grady apportioned all the range of motion deficit to the more significant injury.

On September 28, 2011, the claims administrator found that Mr. Gump had been found to be fully compensated by the 15% permanent partial disability award for the neck and 6% permanent partial disability award for the right shoulder. On January 30, 2013, the Office of Judges affirmed the claims administrator's decision that Mr. Gump was fully compensated for his cervical spine and right shoulder. However, the Office of Judges found that the thoracic spine was part of the compensable conditions and ordered Mr. Gump to be referred for an evaluation for the thoracic spine only.

On March 8, 2013, Dr. Grady issued an independent medical evaluation of Mr. Gump's thoracic spine. Dr. Grady indicated that he had previously examined Mr. Gump for his right shoulder, low back, and cervical spine. According to Dr. Grady, the thoracic region did not show any increased redness, warmth, swelling, tenderness, spasm, or scoliosis. Dr. Grady also remarked that the neurological examination was normal. Dr. Grady's assessment was resolved thoracic sprain. Dr. Grady opined that Mr. Gump was at his maximum degree of medical improvement and suffered no ratable thoracic impairment. Based upon Dr. Grady's report, the claims administrator entered a decision granting no award for permanent partial disability for the thoracic spine on March 14, 2013. Mr. Gump protested.

The Office of Judges determined that Mr. Gump was not entitled to any permanent partial disability for thoracic spine. The Office of Judges determined that the only issue in litigation was

the amount of permanent partial disability related to Mr. Gump's thoracic spine. The Office of Judges identified two reports of record that commented on thoracic impairment. Dr. Guberman opined on June 15, 2006, that Mr. Gump suffered from 7% whole person impairment related to the thoracic spine and Dr. Grady found no impairment on March 8, 2013. The Office of Judges adopted the report of Dr. Grady because it determined that he provided the best measurement of Mr. Gump's current impairment. Dr. Guberman's report was performed seven years prior to that of Dr. Grady's report. The Office of Judges noted that Dr. Grady did not find any muscle tenderness, tenderness to palpitation, scoliosis, or any other attributes that would qualify for ratable impairment. The Office of Judges found that Dr. Grady found full range of motion, that the spine was curved well, that Mr. Gump did not have any recent treatment in his thoracic spine, and that his neurologic exam was normal. The Board of Review adopted the findings of the Office of Judges and affirmed its decision.

We agree with the consistent decisions of the Office of Judges and Board of Review. Dr. Grady's report is consistent with the evidence of record and accurately reflects Mr. Gump's whole person impairment. Section 2.3 General Comments on Evaluation of the American Medical Association's *Guides* at 9 states that "The physician should assess the *current* state of the impairment according to the criteria in the *Guides*." Dr. Guberman made his assessment of Mr. Gump several years prior to the assessment of Dr. Grady. Because Dr. Grady's report more closely reflects Mr. Gump's current state of impairment, the Office of Judges and Board of Review were not in error for adopting his report.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED:   February 10, 2016**

**CONCURRED IN BY:**
Chief Justice Menis E. Ketchum
Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Allen H. Loughry II

**DISSENTING:**
Justice Margaret L. Workman

3